UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOE HAND PROMOTIONS, INC.,
                 Plaintiff,

         -v-

PETER LEVIN, *individually and d/b/a*
PROFESSOR THOMS, et al.,
                 Defendants.

18-CV-9389 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") brings this action against Defendants Peter Levin and PMP Ventures Inc. (together, "Defendants") under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, and the Copyright Act, 17 U.S.C. § 101 *et seq.*, alleging that Defendants willfully, and without authorization, intercepted and commercially displayed a sports broadcast in which Joe Hand held certain exclusive distribution and public performance rights. After Defendants failed to respond to the complaint, Joe Hand moved for default judgment. (Dkt. Nos. 23, 35.) For the reasons that follow, Joe Hand's motion is granted.

**I.    Background**

      The following facts are drawn from the complaint and, by virtue of Defendants' failure to respond to Joe Hand's complaint, are deemed to be true. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

      At some point prior to this litigation, Joe Hand, a Pennsylvania company, acquired certain exclusive distribution and public performance rights in the broadcast of an August 26, 2017 boxing match (the "Broadcast"). (Dkt. No. 1 ("Compl.") ¶¶ 5–6.) To capitalize on these rights, Joe Hand entered into licensing agreements with certain commercial establishments, whereby it authorized those establishments to access the Broadcast in exchange for licensing

1

fees.  (Compl. ¶ 23.)  Joe Hand also made the Broadcast available at discounted residential rates for individuals who wished to access it for noncommercial purposes.  (Compl. ¶¶ 24–25.)

Defendant PMP Ventures Inc. operates a commercial establishment in Manhattan that, under the supervision of Defendant Peter Levin, accessed the Broadcast without entering into a licensing agreement with Joe Hand.  (Compl. ¶¶ 8–13, 16.)  Instead, Defendants intercepted the Broadcast without authorization—perhaps by paying the residential rate available only for private viewers—and then charged their patrons money to come watch it.  (Compl. ¶¶ 15, 27.)

On October 15, 2018, Joe Hand filed this lawsuit, which asserts three legal claims against Defendants.  (*See* Dkt. No. 1.)  First, Joe Hand claims that Defendants have willfully violated 47 U.S.C. § 605 ("Section 605"), a Communications Act provision that bars the unauthorized interception of interstate wire or radio communications, 47 U.S.C. § 605(a).  (Compl. ¶¶ 21–33.)  Second, Joe Hand claims that Defendants have willfully violated 47 U.S.C. § 553 ("Section 553"), another Communications Act provision, which bars the unauthorized interception of communications transmitted through a cable system, 47 U.S.C. § 553(a)(1).  (Compl. ¶¶ 34–39.)  Third, Joe Hand claims that Defendants have willfully infringed its exclusive distribution and public performance rights in the Broadcast, in violation of the Copyright Act, 17 U.S.C. § 501(a).  (Compl. ¶¶ 40–49.)  As a result of these alleged violations, Joe Hand seeks an award of money damages, attorney's fees, and costs.  (Compl. at 11–12.)

Joe Hand effected service on Defendants Levin and PMP Ventures Inc. on November 8, 2018, and November 19, 2018, respectively (Dkt. Nos. 10–11), but Defendants never answered the complaint or otherwise appeared in this action (*see* Dkt. No. 12).  The Clerk of Court then entered a Certificate of Default against Defendants (Dkt. No. 18), and on January 22, 2019, Joe

Hand moved for default judgment (Dkt. No. 23).[1]  Defendants have not responded to Joe Hand's motion, and the Court now addresses its merits.

**II.      Legal Standard**

When a defendant "has failed to plead or otherwise defend" a lawsuit, that defendant is in default and is deemed, for purposes of liability, to have admitted all well-pleaded allegations in the complaint.  *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 55(a)) (adopting report and recommendation).  At that point, the plaintiff is entitled to default judgment if the complaint's allegations "establish [the defendant's] liability as a matter of law."  *Id.* (alteration in original) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

In contrast to the facts supporting liability, however, "the amount of damages" alleged in the complaint "are not deemed true" in the event of a default.  *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (quoting *Credit Lyonnais Sec. (USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir. 1999)).  Rather, after a court has determined that entry of default judgment against a defendant on a particular claim is appropriate, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty" by "determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule."  *Id.* (quoting *Credit Lyonnais*, 183 F.3d at 152).

---

[1] Joe Hand re-filed its default judgment materials without explanation on June 3, 2019. (Dkt. Nos. 32–39.)  To the extent that these unnecessary and belated filings differ from Joe Hand's original submissions, the Court disregards them.

3

**III.    Discussion**

The Court first addresses the question of Defendants' liability under the Communications Act and the Copyright Act.  After concluding that Joe Hand is entitled to the entry of default judgment against Defendants on all counts, the Court then turns to the question of remedy.

**A.    Liability**

As an initial matter, the Court notes that it has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because all of Joe Hand's claims "aris[e] under the . . . laws . . . of the United States."  28 U.S.C. § 1331.  And this Court may exercise personal jurisdiction over Defendants in connection with those claims because the claims arise out of Defendants' in-state transaction of business.  *See, e.g.*, *Garden City Boxing Club, Inc. v. Paquita's Cafe, Inc.*, No. 06 Civ. 6953, 2007 WL 2783190, at *1 (S.D.N.Y. Sept. 26, 2007) (report and recommendation) (exercising jurisdiction over a venue and its owner in connection with their allegedly unauthorized in-state exhibition of a sports broadcast), *adopted*, 2007 WL 2981928 (S.D.N.Y. Oct. 10, 2007).

The Court therefore turns next to the question of whether Joe Hand has established that it is entitled to default judgment against Defendants on the three counts raised in the complaint.[2]

---

[2] Because Defendant Levin is alleged to have been "the individual with supervisory capacity and control over" the exhibition of the Broadcast (Compl. ¶ 9), he and Defendant PMP Ventures Inc. may be held jointly and severally liable to the extent that the exhibition violated the Communications Act, *see Joe Hand Promotions, Inc. v. Elmore*, No. 11 Civ. 3761, 2013 WL 2352855, at *5 (E.D.N.Y. May 29, 2013) ("Individual liability under the [Communications] Act requires that the individual authorize the underlying violations." (quoting *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009))).  The same holds true under the Copyright Act.  *See Yash Raj Films (USA), Inc. v. Adda Rong, Inc.*, No. 08 Civ. 2280, 2010 WL 1270013, at *3 (E.D.N.Y. Mar. 12, 2010) (report and recommendation) ("In this Circuit 'all persons and corporations who participate in, exercise control over, or benefit from [a copyright infringement] are jointly and severally liable as copyright infringers.'" (alteration in original) (quoting *Bartell v. Onbank*, No. 95 Civ. 1807, 1996 WL 421189, at *2 (N.D.N.Y. July 19, 1996))), *adopted*, 2010 WL 1286358 (E.D.N.Y. Mar. 30, 2010).

As for Joe Hand's Communications Act claims, "[t]he Second Circuit has held that both" Section 605 and Section 553 "apply to the unauthorized interception of signals from a cable television system." *Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 339 (S.D.N.Y. 2009) (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996)) (adopting report and recommendation); *see also Time Warner Cable of N.Y.C. v. Barnes*, 13 F. Supp. 2d 543, 547–48 (S.D.N.Y. 1998) ("The unauthorized interception of any cable television programming services which originate and are delivered via satellite or by other means of over-the-air signal transmission is a violation of [Sections 605 and 553]."). Joe Hand has here alleged that the Broadcast "originated via satellite uplink and was subsequently retransmitted to cable systems . . . via satellite signal" (Compl. ¶ 22) and that Defendants, without authorization (Compl. ¶ 26), "intercepted said Broadcast when it was distributed and shown by cable television stations" (Compl. ¶ 37). Because the Court accepts the truth of these allegations by virtue of Defendants' default, Joe Hand is entitled to default judgment on its Communications Act claims.

As for Joe Hand's claim under the Copyright Act, a defendant commits infringement if it "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). These rights include the right "to distribute copies . . . of the copyrighted work," *id.* § 106(3), and the right "to perform the copyrighted work publicly," *id.* § 106(4). Joe Hand has alleged that it holds a registered copyright in "the exclusive rights of distribution and public performance as to commercial establishments to the Broadcast" (Compl. ¶ 41) and that Defendants publicly displayed the Broadcast at a commercial establishment without Joe Hand's authorization (Compl. ¶¶ 43–45). Here too, the Court accepts these allegations as true and so concludes that Joe Hand is entitled to default judgment on its Copyright Act claim. *See Nat'l Basketball Ass'n*

*v. Motorola, Inc.*, 105 F.3d 841, 847 (2d Cir. 1997) (noting that "recorded broadcasts of [sporting events] . . . are . . . entitled to copyright protection").

### B. Remedy

Having concluded that Joe Hand has established Defendants' liability on all counts, the Court turns to the question of remedy. As noted, Joe Hand seeks both damages and attorney's fees and costs. (Compl. at 11–12.) The Court addresses each form of proposed relief in turn.

#### 1. Damages

Even where a plaintiff has established the fact of a defaulting defendant's liability, the court "must 'conduct an inquiry to ascertain the amount of damages with reasonable certainty.'" *Andrews v. 27 Red Music Publ'g, LLC*, No. 15 Civ. 7544, 2019 WL 199893, at *5 (S.D.N.Y. Jan. 15, 2019) (quoting *Credit Lyonnais*, 183 F.3d at 155). While this inquiry often calls for a hearing or further briefing, these steps are "not necessary 'as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment.'" *Friedman v. Mission of the Gabonese Republic*, No. 17 Civ. 8142, 2018 WL 3094917, at *3 (S.D.N.Y. June 20, 2018) (alterations in original) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Here, Joe Hand maintains that it has produced all that is necessary to assess damages, such that no further inquest is needed. (Dkt. No. 24 at 6.)

The Court agrees. As explained below, the Court is able on the present record to assess the proper measure of damages on Joe Hand's Communications Act and Copyright Act claims.

##### a. Communications Act

The Court begins with Joe Hand's claims under the Communications Act. Because Joe Hand has established Defendants' liability under both Section 605 and Section 553, Joe Hand "is entitled to have damages awarded under [Section] 605, which provides for greater recovery." *J&J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) (adopting report

6

and recommendation); *see also G&G Closed Circuit Events, LLC v. Uvas Tapas Bar & Grill Corp.*, No. 14 Civ. 4194, 2014 WL 4555650, at *1 (S.D.N.Y. Sept. 12, 2014) ("Where, as here, a plaintiff asks for relief under both [S]ections 605 and 553, courts award damages only under [S]ection 605."). Under Section 605, a plaintiff may elect to recover either actual damages or statutory damages of up to $10,000. 47 U.S.C. § 605(e)(3)(C)(i). And where a Section 605 violation has been committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain, [a] court in its discretion may increase the award of damages, whether actual or statutory," by up to $100,000 per violation. *Id.* § 605(e)(3)(C)(ii).

Rather than pursuing actual damages, Joe Hand seeks an award of statutory damages. (Dkt. No. 24 at 14.) When calculating damages, courts in this District "generally choose between two methods of calculation—a per-customer damage calculation or a flat-sum award," with the flat-sum approach "typically used when the number of patrons who observed the unauthorized programming is unknown." *Joe Hand Promotions, Inc. v. Martinez*, No. 07 Civ. 6907, 2008 WL 4619855, at *4 (S.D.N.Y. Oct. 17, 2008) (adopting report and recommendation). Here, Joe Hand has presented a report from a site inspector who was present at Defendants' establishment during the exhibition of the Broadcast, and this report estimates that around 250 patrons were in attendance. (Dkt. No. 25-1 at 26.) Ordinarily, the Court would next calculate statutory damages by selecting some per-patron dollar amount and multiplying it by 250. *See Joe Hand*, 2008 WL 4619855, at *4. In this case, though, the Court need not do so. The per-patron multipliers typically used in this District "rang[e] widely, from $50.00 to $300.00," *id.* at *5, and even if this Court were to pick a multiplier at the very bottom of this range, *i.e.*, $50.00,

damages would exceed the $10,000 statutory maximum. The Court therefore concludes that Joe Hand is entitled to $10,000 in statutory damages on its Communications Act claims.[3]

The Court next considers Joe Hand's claim that it is entitled to enhanced damages due to the willful nature of Defendants' violation. When determining whether a Section 605 defendant has acted willfully, such that enhanced damages should be awarded, courts consider factors such as "i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; or iv) charging of a cover charge or premiums for food and drinks." *Id.* (quoting *Kingvision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 515 (E.D.N.Y. 2006)). At bottom, the question for the court is whether the defendant has exhibited "disregard for the governing statute and an indifference for its requirements." *Id.* (quoting *Cablevision Sys. N.Y.C. Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997)).

The Court easily concludes that Joe Hand is entitled to a judgment that Defendants have acted willfully. The record reflects that Defendants advertised their exhibition of the Broadcast and collected cover charges ranging from $20 to $75 from the patrons who were in attendance. (Dkt. No. 25-1 at 20–24.) Moreover, the fact that Defendants arranged for the exhibition of the Broadcast without authorization "is itself a demonstration of willfulness, since '[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.'" *J&J Sports Prods., Inc. v. Ramirez*, No. 17 Civ. 6926, 2018 WL 1961107, at *2 (S.D.N.Y. Apr. 9, 2018) (alteration in original) (quoting *J&J Sports Prods., Inc. v. Onyx Dreams Inc.*, No. 12 Civ. 5355, 2013 WL 6192546, at *6 (E.D.N.Y. Nov. 26, 2013)).

---

[3] Although Joe Hand has presented evidence that Defendants were displaying the Broadcast on nine different television sets (Dkt. No. 25-1 at 26), it has made no argument that Defendants' conduct represents any more than a single Section 605 violation.

The Court is left to consider, then, what measure of enhanced damages it should award in its discretion. Joe Hand suggests $25,000 (*see* Dkt. No. 27), and the Court concludes that this amount is appropriate. The Court's chief aim is "to award damages in an amount that makes infringement less profitable than lawfully obtaining" the Broadcast. *J&J Sports Prods., Inc. v. Kosoria*, No. 06 Civ. 2102, 2007 WL 1599168, at *4 (S.D.N.Y. June 1, 2007). Defendants' infringement here spared them from paying the $8,200 or $9,700 licensing fee that Joe Hand otherwise would have charged them to exhibit the Broadcast (*see* Dkt. No. 25-1 at 2, 27), and Defendants have "likely derived financial benefit" from their infringement "in the way of the sale of food and drinks," *Kosoria*, 2007 WL 1599168, at *4, and through the $20 to $75 cover charges they collected from the roughly 250 patrons in attendance (*see* Dkt. No. 25-1 at 20, 26). In addition, Joe Hand has directed the Court to a *New York Post* article indicating that Defendants have previously held unauthorized viewing parties for broadcasts that are available only to paying subscribers. (Dkt. No. 24 at 14.) Under similar circumstances, courts have awarded enhanced damages equal to three times the amount of statutory damages. *See Kosoria*, 2007 WL 1599168, at *4; *J&J Sports Prods., Inc. v. Drake*, No. 06 Civ. 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (adopting report and recommendation). Particularly given Defendants' efforts to turn a profit from the unlawful exhibition of the Broadcast here, the Court concludes that a multiplier of 2.5 is fully appropriate and so awards Joe Hand $25,000 in enhanced damages.

In total, then, the Court concludes that Defendants shall be jointly and severally liable for their Communications Act violations in the amount of $10,000 in statutory damages and $25,000 in enhanced damages, for a total of $35,000.

### b. Copyright Act

The Court next considers the proper measure of damages on Joe Hand's Copyright Act claim. Similarly to the Communications Act, the Copyright Act allows a prevailing plaintiff to choose between recovering actual damages and recovering statutory damages of between $750 and $30,000 per infringement. 17 U.S.C. § 504(c)(1). And, "where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). Here too, Joe Hand seeks statutory damages rather than actual damages (Dkt. No. 24 at 18), and ultimately Joe Hand asks the Court to award a total of $40,000 against Defendants under the Copyright Act (*see* Dkt. No. 27).

When assessing the proper amount of statutory damages under the Copyright Act, "courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). These considerations are largely identical to the factors the Court considered in calculating damages under the Communications Act, and the Court concludes here, as above, that $35,000 is the proper amount to redress Joe Hand's injury, recoup any unjust enrichment, and deter Defendants from repeating their willful activities.

But although Joe Hand seeks to recover a full measure of damages under each of the Communications Act and the Copyright Act, the Court does not believe that such a course is appropriate. Typically, "[a] plaintiff seeking compensation for the same injury under different legal theories is . . . only entitled to one recovery." *Church & Dwight Co. v. SPD Swiss*

*Precision Diagnostics GmbH*, No. 14 Civ. 585, 2018 WL 4253181, at *16 (S.D.N.Y. Sept. 5, 2018) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995)). Of course, that principle does not directly apply here, given that the Copyright Act and the Communications Act each "vindicate[] separate rights, and courts have found it proper to award damages under both Acts." *Joe Hand Promotions, Inc. v. Maupin*, No. 15 Civ. 6355, 2018 WL 2417840, at *8 (E.D.N.Y. May 25, 2018). But it is appropriate for this Court, in exercising its "broad discretion in setting the amount of statutory damages" under the Copyright Act, *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 362 (S.D.N.Y. 2003) (quoting *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001)), to consider that it has already awarded Joe Hand a substantial sum under the Communications Act and has thereby vindicated the aims of the Copyright Act to the extent that the two statutes' purposes overlap.

The Court concludes that it would be "demonstrably excessive in light of the statutory damages the Court has already [awarded] under the Communications Act" to award Joe Hand an additional $35,000 under the Copyright Act. *Premium Sports, Inc. v. Mendes*, No. 17 Civ. 1309, 2018 WL 2078488, at *10 (E.D.N.Y. Mar. 1, 2018), *adopted*, No. 17 Civ. 1309 (E.D.N.Y. Mar. 16, 2018); *cf. Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (making a single award of statutory damages based on conduct that violated both the Communications Act and the Copyright Act). Accordingly, the Court finds it appropriate to reduce considerably the $35,000 in Copyright Act damages the Court would have awarded in the absence of a parallel award under the Communications Act. Applying an 80% reduction, the Court concludes that Defendants shall be jointly and severally liable in the amount of $7,000 in statutory damages for their willful violation of the Copyright Act.

### 2. Attorney's Fees and Costs

Section 605 entitles a prevailing plaintiff to recover "full costs, including . . . reasonable attorneys' fees." 47 U.S.C. § 605(e)(3)(B)(iii). And the Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party," and that the court "may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. Having prevailed on all of its claims, Joe Hand is entitled to an award of attorney's fees and costs.

As for costs, Joe Hand seeks a total of $1,607.50, which reflects filing fees, costs incurred in serving process, and the expense of hiring an investigator to visit Defendants' premises on the night of the Broadcast. (Dkt. No. 26 ¶ 13; *see also* Dkt. No. 26-1.) Service and filing fees are costs that the prevailing party "may recover as a matter of course" under 28 U.S.C. § 1920, the federal costs statute. *Behzadi v. David & Son Oriental Antique Rugs Corp.*, No. 07 Civ. 7073, 2013 WL 5870343, at *4 (S.D.N.Y. Oct. 31, 2013) (report and recommendation), *adopted*, 2013 WL 6409339 (S.D.N.Y. Dec. 6, 2013). And while this Court doubts that investigative expenses are recoverable as *costs*, *see Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) (holding that "costs" under the Copyright Act are limited to those costs that are specifically listed in the federal costs statute); *J&J Sports Prods., Inc. v. Doe*, No. 05 Civ. 6083, 2007 WL 446351, at *5 (E.D.N.Y. Feb. 6, 2007) (citing cases that have similarly interpreted "costs" as used in Section 605), "[t]he Second Circuit has consistently 'held that attorney's fee awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients,'" *TufAmerica Inc. v. Diamond*, No. 12 Civ. 3259, 2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)), and the Court concludes that the reasonable costs of investigating and documenting Defendants' infringement fall within this category. That said, the bare invoice Joe Hand has submitted in justification of the $750 in investigative costs it seeks to recover provides

insufficient detail to assess the reasonableness of the claimed amount. (*See* Dkt. No. 26-1 at 5.) Accordingly, the Court will award Joe Hand only $350 of its claimed investigative expenses, *see Doe*, 2007 WL 446351, at *7 (declining to award investigative costs due to "deficiencies in the evidence" of those costs), leaving Joe Hand entitled to collect only $1,207.50 of the $1,607.50 it seeks in so-called "costs."

Finally, the Court turns to attorney's fees proper. A reasonable attorney's fee award is "generally determined by the 'lodestar' method, in which the court multiplies the number of hours reasonably spent by an attorney or paralegal assistant by an appropriate hourly rate." *Kingvision Pay-Per-View, Ltd. v. Perez*, No. 06 Civ. 3613, 2008 WL 3982881, at *6 (S.D.N.Y. Aug. 27, 2008) (adopting report and recommendation). In order to enable the court to assess the reasonableness of the time expended in litigation, "a party seeking an award of attorneys' fees must support its request by contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Kingvision Pay-Per-View, Ltd. v. Body Shop*, No. 00 Civ. 1089, 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13, 2002) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Here, Joe Hand seeks $2,875.50 in fees on the basis of 3.6 hours of attorney time, valued at $275 to $350 per hour, and 17.4 hours of paralegal time, valued at $95 per hour. (Dkt. No. 26 ¶ 14.) These hourly rates are reasonable, and Joe Hand has submitted detailed contemporaneous time records that have enabled this Court to satisfy itself that the number of attorney and paralegal hours spent on this case has likewise been reasonable. The Court therefore concludes that Joe Hand is entitled to the full $2,875.50 it seeks in attorney's fees.

All told, then, the Court concludes that Joe Hand is entitled to a total of $4,083 in attorney's fees and costs.

## IV. Conclusion

For the foregoing reasons, Joe Hand's motion for default judgment is GRANTED. The Court concludes that Joe Hand is entitled to judgment against Defendants, jointly and severally, in the amount of $10,000 in statutory damages under the Communications Act, $25,000 in enhanced damages under the Communications Act, $7,000 in statutory damages for willful violation of the Copyright Act, and $4,083 in attorney's fees and costs, for a total of $46,083.

The Clerk of Court is directed to close the motions at Docket Numbers 23 and 35, enter judgment in favor of Joe Hand in the amount of $46,083 plus post-judgment interest at the statutory rate, and close this case.

SO ORDERED.

Dated: July 12, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge